Brady, J.
On November 12, 1997, David Tremblay was badly injured when he was changing a tire on a backhoe equipped with a multi-piece tire rim which explosively separated. At the time of the injury, Mr. Tremblay was employed by Shield Packaging Co., Inc. (Shield). The injury occurred while Tremblay was preparing the backhoe for use in the removal of railroad ties at Shield. Tremblay was then being supervised by Ryan Simpson, Shield’s facilities manager. Ryan reported to his father, the defendant, A. Bruce Simpson (Simpson), who was a one-third shareholder and vice president of operations at Shield. Simpson received the order to remove the railroad ties from Shield’s president, George Bates, and relayed the instructions to his son Ryan. It is undisputed that Tremblay was injured while working for Shield. He settled his workers’ compensation claim against Shield for $750,000.
The plaintiffs sued numerous parties in connection with the accident, including Bridgestone/Firestone, Inc., the maker of the locking ring mechanism incorporated into the backhoe tire, and International Truck and Engine Corporation, the manufacturer of the backhoe. The theories against the manufacturers were typical product liability theories of defective design and failure to warn. All claims in the instant litigation have been resolved except for the case against Simpson.
Count I of the Third Amended Complaint asserts liability against Simpson for:
(a)failing to adequately train and supervise Mr. Tremblay;
(b) failing to provide adequate safety equipment for the tire changing operation;
(c) failing to adequately train, supervise and protect Mr. Tremblay given what they knew, or should have known, about the dangers likely to be encountered by Mr. Tremblay during the tire changing operation; and,
(d) otherwise failing to take adequate and reasonable steps in connection with a tire changing operation conducted on their premises or otherwise subject to their control and supervision.
Count XI of the Third Amended Complaint alleges that Simpson purchased and owned the vehicle, and that he breached his duty of care by:
a. Allowing the vehicle to be used while equipped with multi-piece rims;
b. Allowing the vehicle to be serviced while equipped with multi-piece rims;
c. Failing to remove from the vehicle the multi-piece rims that he knew, or should have known, posed an unreasonable risk of harm to those who would foreseeably come into contact with the vehicle;
d. Failing to effectively warn in connection with the risks posed by the vehicle’s multi-piece rims about which he knew or should have known;
e. Failing to insure that those who would foreseeably come in contact with the vehicle were aware of the serious risks of personal injury that the multipiece rims pose; and,
f. Failing to insure that those who would foreseeably come into contact with the vehicle for the purposes of servicing it had access to appropriate protective gear and equipment.
Count XII of the Third Amended Complaint alleges that Simpson transferred ownership of the vehicle to Shield prior to the date of the accident, and that he breached his duty of care when he transferred it to Shield:
a. When he knew, or should have known, that the vehicle would be used while equipped with multipiece rims;
b. When he knew, or should have known, that the vehicle would be serviced while equipped with multi-piece rims;
c. While failing to remove from the vehicle the multi-piece rims that he knew, or should have known, posed an unreasonable risk or harm to those who would foreseeably come into contact with the vehicle;
d. While failing to effectively warn in connection with the risks posed by the vehicle’s multi-piece rims about which he knew or should have known;
e. While failing to insure that those who would foreseeably come in contact with the vehicle were *319 aware of the serious risks of personal injury that the multi-piece rims pose; and
f. While failing to insure that those who would foreseeably come into contact with the vehicle for the purposes of servicing it had access to appropriate protective gear and equipment.
The difference between Count XI and Count XII is that Count XII asserts that the negligence occurred when Simpson transferred the vehicle to Shield.
Simpson testified at deposition that he became affiliated with Shield in 1963. He owned one-third of the shares of the corporation and was vice president in charge of operations. He acquired the backhoe in the early to mid-1980s when he purchased it, for cash, at an auction from a salvage yard. He bought it for use at Shield, and immediately transported the backhoe by flatbed truck to Shield’s facility in Dudley, Massachusetts, where it has been ever since. Thereafter, Shield used the backhoe in its business, mainly for excavation work. Simpson was aware that the backhoe was equipped with wheels with multi-piece rims, and was generally aware that there was a risk of injury from exploding rims when the tire was being inflated. He learned this as a young man when working at a truck tire shop. Simpson was not reimbursed by Shield for whatever cash he paid for the backhoe at auction.

DISCUSSION

Simpson moves for summary judgment on the three counts in the amended complaint directed against him, namely Counts I, XI and XII, on the ground that the action is barred by the workers’ compensation rule of co-employees’ immunity: “Where compensation benefits are available under G.L.c. 152, an employee injured in the course of his employment by the negligence of a fellow employee may not recover from that fellow employee if [the fellow employee] was also acting in the course of his employment.” Saharceski v. Marcure, 373 Mass. 304, 306 (1977). Tremblay was indisputably acting in the course of his employment when the accident occurred. As to Counts I and XI, which allege negligence of Simpson in connection with employment related responsibilities to Tremblay, the defendant is correct. Those counts must be dismissed.
Plaintiff claims that Count XII presents a different issue. Plaintiff argues that Simpson had a different duty to him as a seller or provider of the product to Shield, which he breached when, in the 1980s, he transferred the backhoe to Shield. He invokes the doctrine first articulated in Carter v. Yardly & Co., 319 Mass. 92, 96-97 (1946):
A person owning or controlling a thing that is dangerous in its nature or is in a dangerous condition ... to his knowledge . . . who deals with or disposes of that thing in a way that he foresees or any exercise of reasonable care ought to foresee will probably carry that thing into contact with some person, known or unknown, who will probably be ignorant of the danger, owes a legal duty to every such person to use reasonable care to prevent injury to him.
I am not persuaded that plaintiffs distinction has merit. Notwithstanding Simpson’s testimony that he “sold” the backhoe to Shield, the reality was that he bought the product, with his own money, for use at Shield. Whether or not he was reimbursed or paid for the alleged transfer is irrelevant. He was simply acting as an agent for his corporate employer (of which he was a principal and an officer) in obtaining equipment for use in company business. Any breach of duty on his part occurred in his role as an employee of Shield, not as an independent seller/lender/provider of equipment. None of the cases cited by plaintiff supports his argument here. Searcy v. Paul, 20 Mass.App.Ct. 134 (1985), Gurry v. Cumberland Farms, 406 Mass. 615 (1990), and Barrett v. Rogers, 408 Mass. 614 (1990), are fact-specific and distinguishable from the events at issue. I am not aware of any case holding that an injured employee may sue a co-worker who happened to purchase for the employer the equipment on which the employee was injured, even though the purchase of the equipment occurred before the injured employee was employed.

ORDER

For the above reasons, defendant A. Bruce Simpson’s motion for summary judgment is ALLOWED.